<table>
<tr><td colspan="3" align="center">ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL</td></tr>
<tr>
<td><br><br><br>**LIZ VIVIANA FONSECA RIVERA y ALEX SÁNCHEZ DÍAZ**<br><br>Recurridos<br><br><br>v.<br><br><br>**PUERTO RICO TELEPHONE CO.**<br><br>Peticionario</td>
<td align="center">KLCE202301366</td>
<td>**CERTIORARI**<br>Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br><br>Civil Núm.:<br>**BY2018CV04070**<br><br>Sobre:<br>Despido Injustificado Discrimen por Embarazo, Daños y Perjuicios por Violación a Derechos Constitucionales</td>
</tr>
</table>

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Mediante *Solicitud de Certiorari*, Puerto Rico Telephone Company (Peticionario o PRTC) nos pide que revisemos una *Resolución*[2] del Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI) en la que el TPI declaró no ha lugar a la *Solicitud de Sentencia Sumaria*[3] presentada por el Peticionario, y en la que solicitó la desestimación de todas las reclamaciones instadas fundamentada en despido injustificado, discrimen por embarazo y daños y perjuicios por violación a derechos constitucionales.

---

[1] Mediante la Orden Administrativa OATA-2024-021 de 2 de febrero de 2024, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución de la Hon. Monsita Rivera Marchand.

[2] Apéndice de *Solicitud de Certiorari*, Anejo I, págs. 1-56. Archivado y notificado el 6 de noviembre de 2023.

[3] *Íd.*, Anejo VIII, págs. 121-861.

Por las razones que discutimos a continuación, expedimos el auto de certiorari, revocamos la *Resolución* y devolvemos el caso para que continúen los procedimientos.

**I.**

El caso de marras originó el 9 de noviembre de 2018 luego de que la Sra. Fonseca Rivera y el señor Alex Sánchez Díaz (en conjunto, los Recurridos o parte Recurrida) incoaron una *Demanda*[4] en contra de la Puerto Rico Telephone Company (PRTC) por daños y perjuicios, por despido injustificado y por violaciones a derechos constitucionales. La *Demanda* luego fue enmendada para incluir una reclamación con relación a la Ley del Seguro Choferil.

Tras varios trámites procesales, el 19 de septiembre de 2019, PRTC presentó una *Solicitud de Sentencia Sumaria*,[5] a la que se opusieron los Recurridos el 30 de octubre de 2019.[6] La *Solicitud de Sentencia Sumaria* incluyó una deposición de la demandante Sra. Fonseca Rivera, llevada a cabo el 21 de febrero de 2019, donde se discutió su relación con la Sra. Betzaida Nieves Lebrón, su supervisora inmediata en la PRTC. En la misma, la demandante aseveró haber tenido una buena relación con su supervisora Betzaida Nieves. Que por ser un departamento de ventas había presión laboral pero que su relación con ella era buena. Por otro lado, en cuanto a su despido, la demandante arguyó que reclamaba discrimen por embarazo, sin embargo, admitió que al momento de su despido no estaba embarazada.

Ante ello, la parte Recurrida en su escrito en Oposición, procedió a incluir una *Declaración Jurada* suscrita por la Sra. Fonseca Rivera donde declaró:

> 3. Que mi último día de trabajo en la Puerto Rico Telephone Company fue el 14 de agosto de 2017, estando embarazada de 26 semanas de gestación.

---

[4] *Íd.*, Anejo II, págs. 57-63.
[5] *Íd.*, Anejo VIII, págs. 121-861.
[6] *Íd.*, Anejo IX, págs. 862-1039.

> Ese día mi supervisora inmediata, Betzaida Nieves Lebrón me llamó a su oficina como a las 8:30 de la mañana y expresó que los agentes de ventas tenían que vender más, o de lo contrario, tendría que cerrar el canal y no tendría plaza (lugar de empleo) donde colocarme. Por consiguiente, quedaría sin empleo. Posteriormente, ese día [fui] ingresada al Hospital Presbiteriano dando a luz el 5 de septiembre de 2017 y fui dada de alta el 9 de septiembre de [2017]. El nacimiento de mi hija fue [prematuro] de 7 meses.
>
> **4. Hago constar que esta declaración jurada no constituye una declaración jurada acomodaticia, falsa o simulada ("sham affidavit") sobre hechos medulares. Este incidente ocurrido el 14 de agosto de 2017 no fue objeto de pregunta en mis deposiciones.[7]**

El hecho sobre el cual declaró la Sra. Fonseca Rivera no formó parte del descubrimiento de prueba, ni fue levantado en su deposición. PRTC solicitó una *Moción Solicitando Prórroga para Presentar Réplica a "Oposición"*.[8] El TPI la denegó y dio por sometidas para adjudicación la *Solicitud* y la *Oposición* de sentencia sumaria.[9]

El 20 de marzo de 2020, el TPI dictó una *Sentencia Parcial*[10] que desestimó la causa de acción de la parte Recurrida basada en violaciones a derechos constitucionales.[11] Sin embargo, esta declaró no ha lugar a la desestimación de las reclamaciones basadas en discrimen por embarazo, despido injustificado y Ley del Seguro Choferil. Tanto PRTC como la parte Recurrida solicitaron reconsideración de la *Sentencia Parcial*, sin embargo, el TPI se sostuvo en sus determinaciones.[12]

Inconforme, el 7 de julio de 2020, la parte Recurrida presentó una *Apelación* ante nos, mediante la cual alegó que el TPI erró al desestimar las reclamaciones basadas en violaciones a derechos

---

[7] *Íd.*, pág. 991. (Énfasis nuestro).

[8] *Íd.*, Anejo X, págs. 1040-1041.

[9] *Íd.*, Anejos XI – XV, págs. 1042-1051.

[10] El 16 de junio de 2020, el TPI emitió una *Sentencia Parcial Enmendada Nunc Pro Tunc* que enmendó las determinaciones de hechos incontrovertidos #11 y #19(B). *Íd.*, Anejo XXII, págs. 1807-1848.

[11] *Íd.*, Anejo XVI, págs. 1052-1093.

[12] *Íd.*, Anejos XX y XXI, págs. 1805-1806.

constitucionales.[13] El 15 de julio de 2020, PRTC también presentó una *Solicitud de Certiorari* ante este Foro. En esta, señaló errores similares a los que tenemos ante nuestra consideración en el caso de autos. [14]

En ese momento, el Tribunal de Apelaciones consolidó ambos recursos apelativos y dictó sentencia.[15] El Tribunal revocó parcialmente la *Sentencia Parcial* del TPI. Confirmó la desestimación de la causa de acción de daños y perjuicios por violación de derechos constitucionales, pero revocó la denegatoria a resolver por vía de sentencia sumaria en cuanto a las otras causas de acción. Por lo tanto, devolvió el caso para que PRTC tuviese la oportunidad de presentar una réplica. El Tribunal de Apelaciones no atendió los otros errores señalados por PRTC.

Así las cosas, el 8 de marzo de 2021, PRTC presentó su *Réplica a "Oposición a Moción de Sentencia Sumaria"*.[16] En esta, PRTC sostuvo que los hechos que el TPI estimó en controversia no son impedimento para la resolución del caso por la vía sumaria, puesto que:

> (1) No son hechos medulares ni esenciales; (2) están basados en evidencia inadmisible, como una declaración jurada que constituye "sham affidavit"; (3) son controversias de derecho no susceptibles de considerarse como hechos en controversia; y (4) las 105 determinaciones de hechos incontrovertidos que enumeró este Honorable Tribunal permiten llegar a conclusiones de derecho suficientes para disponer de todas las reclamaciones de los Demandantes[-Recurridos] por la vía sumaria.[17]

En esencia, PRTC alegó que los diecisiete (17) hechos que el TPI estimó controvertidos no son esenciales ni medulares. Luego de considerar los argumentos esbozados en la *Solicitud, Oposición* y

---

[13] *Íd.*, Anejo XXIII, págs. 1849-1868.
[14] *Íd.*, Anejo XXIV, págs.1869-1898.
[15] *Íd.*, Anejo XXX, págs. 1963-1998. KLAN202000351 consolidado con el KLCE202000536, panel integrado por su presidente el Juez Figueroa Cabán, el Juez Flores García (juez ponente) y el Juez Salgado Schwarz.
[16] *Íd.*, Anejo XXXVI, págs. 2020-2042.
[17] *Íd.*, pág. 2021.

*Réplica,* el 31 de octubre de 2023, el TPI emitió una *Resolución* denegando la *Solicitud de Sentencia Sumaria.*

Basado en los argumentos de las partes y la prueba presentada, el TPI hizo las siguientes determinaciones de hechos incontrovertidos:

1. La señora Fonseca Rivera comenzó a trabajar en PRTC el 28 de diciembre de 2012, como Agente de Ventas Pymes, en el Departamento de Ventas Corporativas.
2. Entre las funciones de la señora Fonseca Rivera como Agente de Ventas Pymes se encontraban: traer agentes nuevos a la compañía; cumplimentar sus contratos; darles adiestramientos; trabajar con el plan de comisiones; y visitar agentes para verificar sus ventas, entre otras.
3. La Sra. Betzaida Nieves era la supervisora directa de la señora Fonseca Rivera desde que esta última comenzó a trabajar en PRTC hasta que fue despedida.
4. La señora Fonseca Rivera ocupó la misma posición de Agentes de Ventas Pymes durante todo el tiempo que laboró en PRTC.
5. Al momento del despido de PRTC, la señora Fonseca Rivera no estaba embarazada.
6. El 14 de agosto de 2017, la señora Fonseca Rivera tenía veinticinco (25) semanas de gestación cuando comenzó a experimentar síntomas anómalos, por lo que su ginecólogo, el Dr. Efraín Torres, le ordenó acudir a la Sala de Emergencia del Hospital Presbiteriano, en San Juan, donde fue hospitalizada, por haber roto fuente prematuramente.
7. Durante la noche del 5 de septiembre de 2017, le realizaron una cesárea de emergencia a la señora Fonseca Rivera, por lo que permaneció hospitalizada hasta el 9 de septiembre de 2017.
8. La bebé prematura de la señora Fonseca Rivera fue entubada y trasladada a intensivo de la unidad neonatal del Hospital Presbiteriano, donde permaneció hasta el 15 de octubre de 2017, debido a su situación delicada de salud, porque sus pulmones no estaban bien desarrollados y pesaba dos (2) libras.
9. El 29 de agosto de 2017, la Sra. Ileana Agosto, Analista de Beneficios de Personal de la División de Licencias de PRTC, le envió un correo electrónico a la Sra. Betzaida Nieves, informándole que procedía pasar el caso de la señora Fonseca Rivera por tiempo de enfermedad. Le acompañó el documento del seguro choferil y la solicitud de licencia por maternidad para que se los hiciera llegar a la señora

Fonseca Rivera. Además, le indicó que la señora Fonseca Rivera se podía acoger a la licencia de maternidad cuatro (4) semanas antes de la fecha probable del parto.

10. El 29 de agosto de 2017, la Sra. Ileana Agosto notificó a la codemandante, señora Fonseca Rivera, a través del correo electrónico de su esposo, el codemandante Sánchez Díaz, los documentos de la licencia por maternidad y una solicitud del seguro choferil para que la empleada la completara y entregara en PRTC.

11. El 1 de septiembre de 2017, el codemandante Sánchez Díaz le notificó a la Sra. Betzaida Nieves los documentos complementados, relacionados con el seguro choferil, junto con el certificado médico, preparado por el Dr. Efraín Ramírez y copia de su identificación.

12. El 4 de septiembre de 2017, la señora Fonseca Rivera le envió a la Sra. Ileana Agosto un correo electrónico, indicándole que el viernes pasado le había remitido a la Sra. Betzaida Nieves los documentos relacionados con el seguro choferil junto con copia de su identificación. Le solicitó a la Sra. Ileana Agosto que le enviara por escrito el detalle de cómo y cuándo serían los pagos que recibiría de los salarios relacionados con la licencia de maternidad.

13. El 4 de marzo de 2019, la Sra. Ileana Agosto envió un correo electrónico a la Sra. María Rossy, en el cual le reenvió un correo electrónico del 20 de noviembre de 2018, de la División de Beneficios del seguro choferil del DTRH, con copia a María Rossy, titulado "Estatus de Reclamaciones", donde indicó:

   [...]
   10) Liz V. Fonseca Rivera 2019-0307, Empleada fue dada de baja efectivo al 16/abril/2018; si necesita alguna información, favor de comunicarse al (787-706-6452).

14. La carta de despido de la señora Fonseca Rivera está fechada el 20 de abril de 2018. El depósito en el correo fue el 23 de abril de 2018.

15. **La relación de la codemandante señora Fonseca Rivera con su supervisora Betzaida Nieves fue buena, aunque la codemandante alegó que existía presión laboral**. (Énfasis nuestro).

16. La señora Fonseca Rivera recibió copia del Reglamento de Disciplina, Manual de Ética, Código de Conducta Empresarial y Normas Generales de Conducta del patrono, una vez comenzó a trabajar en PRTC.

17. La señora Fonseca Rivera desconoce quién fue la persona que tomó la decisión de su despido.

18. La señora Fonseca Rivera recibió una copia y conocía la Práctica RH025-A de Ausencias y Licencias de PRTC ("Práctica RH-025-A"). A esos efectos, el 28 de diciembre de 2012 la codemandante firmó un acuse de la entrega de dicho manual.

19. La Práctica RH-025-A establece lo siguiente en torno al período de licencia por embarazo y maternidad, en las págs. 9-10, lo siguiente:

VI. LICENCIA POR MATERNIDAD

A. Toda empleada en estado de embarazo tendrá derecho a un periodo de descanso de cuatro (4) semanas antes y cuatro (4) semanas después del alumbramiento, con paga completa a razón de su salario regular. El pago será por adelantado, por lo que es requerido que la licencia se solicite por lo menos con 20 días de anticipación, antes de comenzar la licencia. La empleada podrá optar hasta sólo una semana de descanso prenatal y extender hasta siete semanas el descanso post natal a que tiene derecho, siempre que presente a su supervisor una certificación médica que acredite que está en condiciones de trabajar hasta una semana antes del alumbramiento. Para esto el médico deberá tomar en consideración la clase de trabajo que desempeña la empleada.

B. La licencia por maternidad de empleadas UIET y HIETEL será procesada de acuerdo con las disposiciones de los Convenios Colectivos vigentes.

C. Licencias por Maternidad de Empleadas Gerenciales

[...]

2. **De sobrevenir una complicación después del alumbramiento que le impidiese trabajar después de transcurridas las semanas de licencia por maternidad, podrá solicitar un período de descanso adicional de acuerdo con lo dispuesto por la Ley de Protección de Madres Obreras que provee una licencia sin paga. El descanso adicional será sujeto a que presente una certificación médica acreditativa de tal complicación**. La empleada podrá presentar solicitud de beneficios bajo el Seguro por Incapacidad No Ocupacional (SINOT) para el período adicional. (Énfasis nuestro).

[...]

20. Respecto a las licencias por razones familiares y médicas, relacionadas al nacimiento de un hijo, la Práctica RH-025-A, págs. 10-13, dispone lo siguiente:

A. Licencias por razones familiares y médicas de empleados UIET y HIETEL serán procesadas de acuerdo con las disposiciones de los Convenios Colectivos vigentes y leyes aplicables.

B. Empleados Gerenciales

Todo empleado regular que haya cumplido doce (12) meses de servicio en la Compañía y que haya completado 1,250 horas trabajadas para la Compañía inmediatamente antes de solicitar una licencia bajo las disposiciones de la Ley de Licencias por Razones Familiares y Médicas (en adelante FMLA), tendrá derecho a una licencia sin paga hasta un máximo de doce (12) semanas, por las siguientes razones:

1. Nacimiento de un hijo, o adopción.

2. Para cuidar a un familiar cubierto por la Ley FMLA, que sufra de una condición seria de salud, de acuerdo con las condiciones que la referida Ley específica para cualificar una condición seria. Los familiares cubiertos por la Ley son cónyuges legales, hijos, padres o madres del empleado.

3. Por una condición seria de salud del empleado.

[...]

C. [...]

D. Cuando la licencia es solicitada por el nacimiento o adopción de un hijo o para cuidar a un familiar con una condición seria de salud y cubierto por la Ley, la Compañía requerirá que el empleado agote la licencia por vacaciones y mientras agote vacaciones concurrentemente estará agotando FMLA. Una certificación médica que contenga los elementos de información necesaria será requerida para evaluar una solicitud por condiciones seria de salud del empleado o de su familiar cubierto por la Ley.

[...]

21. La Práctica RH-025-A, pág. 19, dispone lo siguiente en torno a licencias sin sueldo:

1) **Una licencia sin sueldo podrá concederse hasta un máximo de seis (6) meses a base del mérito del caso**. Un mismo empleado no podrá solicitar licencia sin sueldo en dos (2) años consecutivos. No será el propósito de esta licencia permitir a un empleado probar en otro trabajo para cambiar de empleo o para lucrarse. (Énfasis nuestro).

22. La señora Fonseca Rivera admitió que, a tenor con las disposiciones de la Práctica RH-025-A, pág. 19,

la licencia sin sueldo no puede ser utilizada para probar en otro trabajo, cambiar de empleo o lucrarse.

23. **La señora Fonseca Rivera presentó un certificado médico del Dr. Efraín Ramírez, ginecólogo, donde se hizo constar que estaría hospitalizada desde el 14 de agosto al 18 de noviembre de 2017**. (Énfasis nuestro).

24. **El parto de la señora Fonseca Rivera ocurrió el 5 de septiembre de 2017**. (Énfasis nuestro).

25. **Para el 5 de septiembre de 2017, la señora Fonseca Rivera se encontraba disfrutando de su licencia de maternidad**. (Énfasis nuestro).

26. **La señora Fonseca Rivera disfrutó de su licencia de maternidad desde el 15 de agosto de 2017 hasta el 9 de octubre de 2017**. (Énfasis nuestro).

27. La señora Fonseca Rivera admitió que la Sra. Ileana Agosto, Analista de Beneficios de Personal de PRTC, le cursó una carta del 13 de septiembre de 2017, donde le informó que se encontraba disfrutando de su licencia de maternidad, la cual vencía el 9 de octubre de 2017; y que debía volver a su trabajo el 10 de octubre de 2017. En dicha carta también se mencionó que los períodos de la licencia de maternidad se agotan concurrentemente con los períodos cubiertos bajo la licencia, por razones médicas familiares ("FMLA").

28. La codemandante, señora Fonseca Rivera, recibió otra carta de parte de la Sra. Ileana Agosto, fechada el 1 de noviembre de 2017, donde se le informó que podía acogerse a una licencia de SINOT, Choferil o ACAA, la que aplicara, y que debía completar la solicitud correspondiente.

29. **La señora Fonseca Rivera admitió que PRTC le extendió su licencia de maternidad hasta el 20 de noviembre de 2017**. (Énfasis nuestro).

30. **La señora Fonseca Rivera admitió que el Dr. Ramón Cuevas le solicitó a PRTC, mediante una carta, que se le diera una licencia sin sueldo a la codemandante, la señora Fonseca Rivera, por un período de tres (3) a cuatro (4) meses. A esos efectos, la señora Fonseca Rivera admitió que PRTC le concedió una licencia sin sueldo, desde el 16 de enero de 2018 hasta el 16 de abril de 2018, según solicitado por el Dr. Ramón Cuevas**. (Énfasis nuestro).

31. El 15 de diciembre de 2017, la Sra. Betzaida Nieves, Gerente de la División de Ventas Indirectas y Pymes de PRTC, envió una carta a la señora Fonseca Rivera, en torno a su Solicitud de Licencia sin Sueldo Práctica RH-025-A, en la que hizo constar lo siguiente:

Recibimos su solicitud de Licencia Sin Sueldo para el periodo del 20 de diciembre de 2017 hasta el 20 de junio de 2016.

Luego de evaluar su solicitud determinamos aprobar la Licencia Sin Sueldo desde el 20 de diciembre de 2017 hasta el 15 de enero de 2018. Usted deberá reportarse a trabajar el 16 de enero de 2018.

32. **La señora Fonseca Rivera admitió que PRTC le aprobó una licencia sin sueldo desde el 20 de diciembre de 2017 hasta el 16 de enero de 2018. Así las cosas, la señora Fonseca debía reportarse a trabajar el 16 de enero de 2018**. (Énfasis nuestro).

33. El 26 de enero de 2018, la Sra. Betzaida Nieves envió una carta a la codemandante, la señora Fonseca Rivera, con referencia a la Solicitud de Licencia sin Sueldo Práctica RH-025-A, donde indicó lo siguiente:

    A usted se le aprobó una Licencia Sin Sueldo desde el 20 de diciembre de 2017 hasta el 15 de enero de 2018.

    **El 17 de enero de 2018, usted solicitó una extensión a la Licencia Sin Sueldo por un periodo de 3 a 4 meses. En esta ocasión, la Licencia Sin Sueldo ha sido aprobada desde el 15 de febrero de 2018 hasta el 15 de marzo de 2018**. (Énfasis nuestro).

    A tenor con las disposiciones de la Práctica RH-025-A, la Licencia Sin Sueldo no puede ser utilizada con el propósito de probar en otro trabajo para cambiar de empleo o para lucrarse.

    Usted deberá reportarse a trabajar el viernes 16 de marzo de 2018.

34. La señora Fonseca Rivera reconoció que **PRTC tiene discreción para aprobar o denegar las licencias sin sueldo que le fueron otorgadas del 16 de enero de 2018 hasta el 16 de abril de 2018**, según dispone la Práctica RH-025-A. (Énfasis nuestro).

35. El 16 de marzo de 2018, la Sra. Betzaida Nieves envió una comunicación a la señora Fonseca Rivera sobre la Solicitud de Licencia Sin Sueldo, según dispone la Práctica RH-025-A, en la que estableció lo siguiente:

    A usted se le aprobó una Licencia Sin Sueldo desde el 20 de diciembre de 2017, concedida para el cuido de su hija.

    **Conforme a su solicitud, en esta ocasión, se le aprueba una extensión a la Licencia Sin Sueldo desde el 16 de marzo de 2018 hasta el 15 de abril de 2018. Usted deberá reportarse a trabajar el lunes 16 de abril de 2018**. (Énfasis nuestro).

A tenor con las disposiciones de la Práctica RH-025-A, la Licencia Sin Sueldo no puede ser utilizada con el propósito de probar en otro trabajo para cambiar de empleo o para lucrarse.

36. **La señora Fonseca Rivera admitió que PRTC también le concedió licencias sin sueldo en los meses de febrero, marzo y hasta el 16 de abril de 2018**. (Énfasis nuestro).

37. **La señora Fonseca Rivera estuvo fuera de sus funciones en PRTC, en una licencia sin sueldo hasta el 16 de abril de 2018**. (Énfasis nuestro).

38. La codemandante, señora Fonseca Rivera, admitió que el 16 de marzo de 2018, la Sra. Betzaida Nieves le envió una carta, en la cual se le informó la extensión de su licencia sin sueldo, desde el 16 de marzo de 2018 hasta el 16 de abril de abril de 2018. La carta indicaba que la señora Fonseca Rivera tenía que reportarse a trabajar el lunes, 16 de abril de 2018.

39. **La señora Fonseca Rivera admitió que estaba consciente de que la licencia sin sueldo era otorgada discrecionalmente por PRTC, que no era infinita y que eventualmente iba a finalizar**. (Énfasis nuestro).

40. La señora Fonseca Rivera admitió que **para el 16 de abril de 2018, no se encontraba en una licencia por maternidad**. (Énfasis nuestro).

41. **La codemandante, la señora Fonseca Rivera, admitió que desde el 20 de diciembre de 2017 hasta el 16 de abril de 2018, estuvo fuera de sus labores en PRTC mediante una licencia sin sueldo**. A esos efectos, la codemandante también admitió que durante ese período su entonces patrono, PRTC, siempre le reservó su empleo. (Énfasis nuestro).

42. La señora Fonseca Rivera aceptó que del 20 de diciembre de 2017 hasta el 16 de abril de 2018, siguió siendo empleada de la PRTC.

43. El sábado, 14 de abril de 2018, a las 2:16 p.m., la Sra. Betzaida Nieves envió un correo electrónico a la Sra. Zoraida Báez, con copia a Miguel Vargas, María Rossy y José Pulido, con relación a la codemandante señora Fonseca Rivera. En dicha comunicación, la Sra. Betzaida Nieves preguntó a las demás personas a quienes se copió el mensaje, quién sería la persona que le notificaría a la codemandante que la licencia no había sido aprobada y que se tenía que presentar a trabajar el lunes.

44. El lunes, 16 de abril de 2018, a las 9:49 a.m., la Sra. María Rossy envió un correo electrónico a la Sra. Betzaida Nieves, con copia a Miguel Vargas, José Pulido y Zoraida Báez, sobre la situación de la

codemandante Fonseca Rivera, donde indicó que la empleada demandante había sido notificada.

45. **El 16 de abril de 2018, la señora Fonseca Rivera se comunicó por la vía telefónica con su supervisora, la Sra. Betzaida Nieves, la cual le indicó que no se le había aprobado otra extensión a la licencia sin sueldo para el mes de abril a mayo de 2018**. (Énfasis nuestro).

46. La señora Fonseca Rivera admitió que la Sra. María Rossy le indicó que **tenía que reportarse a trabajar a la PRTC, el 16 de abril de 2018**. Este hecho también fue declarado por la Sra. María Rossy en su deposición. (Énfasis nuestro).

47. El lunes, 16 de abril de 2018, a las 12:44 p.m., la Sra. María Rossy envió un correo electrónico a Betzaida Nieves, Miguel Vargas, José Pulido y Zoraida Báez sobre la codemandante, señora Fonseca Rivera, donde informó lo siguiente:

    La empleada llamó esta mañana para saber el status de los documentos que radicó la semana pasada y le indiqué que la licencia sin sueldo fue denegada por necesidad de servicio.

    **La empleada solicitó reconsideración a la misma alegando que su hija nació prematura, no puede ir a un cuido por 1 ½ año (aunque dijo que la va a enviar en los próximos meses) y no tenía quien la cuidara. Le informé que la Cia. consideró su situación y por eso se le concedió la licencia por varios meses, pero la necesidad de servicio es apremiante y no se puede extender la misma**. (Énfasis nuestro).

    Estaré trabajando con la contestación a la petición de la empleada.

48. El 22 de abril de 2018, la codemandante, señora Fonseca Rivera, envió un correo electrónico a su supervisora Betzaida Nieves, donde le indicó lo siguiente:

    Betzaida, gracias por la información es que ella el miércoles me dijo que me estarían enviando la respuesta y aún no he recibido. El miércoles les pedí presentarme, pero me dijo que esperara la contestación.

49. **La señora Fonseca Rivera admitió que no había licencia de vacaciones que PRTC tuviera que liquidarle al momento de su despido**. (Énfasis nuestro).

50. La señora Fonseca Rivera no se encuentra reclamando licencia de vacaciones en el caso de marras.

51. **La señora Fonseca Rivera admitió que PRTC no es responsable por las situaciones personales adversas que le ocurrieron, relacionadas con el nacimiento de su hija**. (Énfasis nuestro).

52. **La señora Fonseca Rivera admitió que para la fecha de su despido de PRTC, no se encontraba en una licencia por embarazo**. (Énfasis nuestro).

53. La señora Fonseca Rivera reconoció que durante el tiempo que estuvo disfrutando de la licencia por maternidad, siempre continuó siendo empleada de PRTC.

54. **La hija del matrimonio Fonseca-Sánchez fue dada de alta del hospital el 15 de octubre de 2017**. (Énfasis nuestro).

55. **La señora Fonseca Rivera admitió que pudo cuidar a su hija, una vez fue dada de alta, desde el 15 de octubre de 2017 hasta el 16 de abril de 2018, gracias a que PRTC le concedió licencias a esos fines**. (Énfasis nuestro).

56. **La señora Fonseca Rivera admitió que disfrutó de toda la licencia de maternidad provista por PRTC**. (Énfasis nuestro).

57. **La señora Fonseca Rivera aceptó que PRTC le pagó toda su licencia de maternidad**. (Énfasis nuestro).

58. La señora Fonseca Rivera reconoció que las alegaciones que tiene para su discrimen por embarazo son las mismas que utilizó para fundamentar que su despido estuvo injustificado.

59. **La señora Fonseca Rivera alegó que su despido estuvo injustificado, ya que para el 16 de abril de 2018 no tenía con quién dejar a su hija cuidando y aun así la PRTC le indicó que tenía que reportarse a trabajar dicho día**. (Énfasis nuestro).

60. **La señora Fonseca Rivera admitió que conocía que su licencia sin sueldo fue aprobada hasta el 16 de abril de 2018, y por esa razón se le requirió reportarse a trabajar ese día a la compañía**. (Énfasis nuestro).

61. **La señora Fonseca Rivera aceptó que la PRTC no es responsable de que para el 16 de abril de 2018, no hubiese tenido a nadie para cuidar a su hija**. (Énfasis nuestro).

62. La señora Fonseca Rivera admitió que para realizar una solicitud de vacaciones hay que seguir un procedimiento, el cual tiene que ser aprobado por su jefe inmediato y deben ser planificadas dependiendo el calendario del departamento.

63. **La señora Fonseca Rivera admitió que no está culpando a la PRTC, por haberle solicitado vacaciones a último momento y no haber sido aprobadas**. (Énfasis nuestro).

64. La señora Fonseca Rivera aceptó que el 17 de enero de 2018 le envió una carta a PRTC solicitando una licencia sin sueldo de tres (3) a cuatro (4) meses, y que el 16 de abril de 2018, fecha en la cual tenía que

regresar a su empleo, se cumplían los tres (3) meses desde que había solicitado de licencia sin sueldo.

65. **La señora Fonseca Rivera reconoció que para el 16 de abril de 2018, no había realizado gestiones para contratar a alguien para que cuidara a su hija**. (Énfasis nuestro).

66. **La señora Fonseca Rivera admitió que mientras estuvo disfrutando de distintas licencias desde el 15 de agosto de 2017 al 16 de abril de 2018, PRTC le efectuó distintos pagos directos a su cuenta de Banco Popular. A esos efectos, la demandante admitió que estuvo recibiendo pagos hasta mayo de 2018**. (Énfasis nuestro).

67. La señora Fonseca Rivera aceptó que, mientras estuvo en varias licencias desde el 15 de agosto de 2017 al 16 de abril de 2018, acumuló una deuda pagadera a PRTC, referente al plan médico. A esos efectos, la empresa realizó un plan de pago a la demandante.

68. La señora Fonseca Rivera admitió, a su vez, que todas las alegaciones que tiene en contra de PRTC se encuentran relacionadas al escenario del trabajo.

69. La señora Fonseca Rivera admitió que estuvo en licencia sin sueldo desde octubre de 2017 hasta el 16 de abril de 2018.

70. El apodo de la señora Fonseca Rivera es "Viany's".

71. La señora Fonseca Rivera admitió que tuvo una empresa desde 2016 hasta marzo de 2019, llamada Viany's Events & More, mediante la cual realizaba decoraciones para fiestas de "baby shower" y cumpleaños, alegadamente como un pasatiempo.

72. La señora Fonseca Rivera admitió que cobraba $200.00 por montaje para cada actividad.

73. En el 2016, la señora Fonseca Rivera realizó una sola actividad para su compañía de eventos, por lo que devengó $200.00.

74. En el 2017, la señora Fonseca Rivera efectuó tres (3) actividades para su compañía de eventos, por lo que percibió $600.00.

75. En el 2018, la señora Fonseca Rivera no ejecutó ninguna actividad para su compañía de eventos.

76. En el 2019, la señora Fonseca Rivera realizó una sola actividad, por lo que devengó $200.00.

77. La señora Fonseca Rivera admitió que los ingresos que obtuvo de su compañía Viany's Events & More no fueron incluidos en las planillas de contribuciones sobre ingresos.

78. La señora Fonseca Rivera admitió que sabe que es un delito el no haber incluido los ingresos que obtuvo de su compañía Viany's Events & More, en las planillas de contribuciones sobre ingresos.

79. La señora Fonseca Rivera no inscribió su compañía Viany's Events & More en el Departamento de Estado

y tampoco se inscribió en el Registro de Comerciantes del Departamento de Hacienda.

80. La señora Fonseca Rivera admitió que de lo que devengó en su compañía de Viany's Events & More, tampoco pagó seguro social.

81. **En la carta del 26 de enero de 2018, enviada a la señora Fonseca Rivera, PRTC le indicó que la licencia sin sueldo que se le estaba concediendo no podía ser utilizada para probar en otro trabajo, cambiar de empleo o lucrarse**. (Énfasis nuestro).

82. En la carta remitida el 16 de marzo de 2018, PRTC indicó nuevamente a la señora Fonseca Rivera que la licencia sin sueldo que se le estaba concediendo no podía ser utilizada para probar en otro trabajo, para cambiar de empleo o para lucrarse.

83. La señora Fonseca Rivera admitió que recibió copia del Reglamento de Disciplina de PRTC ("Reglamento"), el 28 de diciembre de 2012, fecha en la cual comenzó a trabajar en dicha empresa.

84. La demandante admitió que la Regla 24 del Reglamento de Disciplina de la PRTC establece lo siguiente:

Abandono del servicio. **Se considera abandono de servicio cuando un empelado permanezca ausente de sus labores durante un periodo de tres días laborables o más, sin haber notificado a su supervisor la razón de su ausencia de acuerdo a las normas de la compañía. Se incluye en esta falta la no reinstalación de un empleado a su puesto, luego de finalizado el disfrute de cualquier licencia que le haya sido concedida**. (Énfasis nuestro).

85. **En la *Segunda Demanda Enmendada*, la señora Fonseca Rivera alegó que PRTC le violentó la reserva de empleo de la Ley de Seguro Choferil**. (Énfasis nuestro).

86. **La señora Fonseca Rivera alegó que entregó los documentos de la Ley de Seguro Choferil y que PRTC no trabajó correctamente su solicitud**. (Énfasis nuestro).

87. Durante su deposición, se le mostró a la codemandante copia de la solicitud de seguro choferil, que ella entregó en PRTC, fechada [el] 1 de septiembre de 2017. Así, la señora Fonseca Rivera admitió que en primera instancia solicitó la licencia de seguro choferil, a través de su médico, del 14 de agosto de 2017 hasta el 18 de noviembre de 2017.

88. La señora Fonseca Rivera aceptó que durante las fechas del 14 de agosto de 2017 hasta el 18 de noviembre de 2017, su empleo en la PRTC fue reservado.

89. La señora Fonseca Rivera reconoció que estuvo cobrando salarios de PRTC hasta noviembre de 2017.

90. La señora Fonseca Rivera indicó que sometió copia de una segunda solicitud de seguro choferil, a través de su médico, para las fechas del 10 de octubre de 2017 hasta el 19 de diciembre de 2017.

91. La señora Fonseca Rivera admitió que en las fechas del 10 de octubre de 2017 hasta el 19 de diciembre de 2017, su empleo en la PRTC estuvo reservado.

92. **La señora Fonseca Rivera aceptó que las únicas copias de las solicitudes de seguro choferil que envió a la empresa fueron las del 14 de agosto de 2017 hasta el 18 de noviembre de 2017 y las del 10 de octubre de 2017 hasta el 19 de diciembre de 2017**. (Énfasis nuestro).

93. Las solicitudes de licencias que realizó la demandante a la PRTC siempre las hizo para cuidar a su hija.

94. La señora Fonseca Rivera reconoció que las fechas que solicitó en la licencia de seguro choferil fueron las escritas por su médico, que es la persona que determina el periodo de licencia necesario.

95. La señora Fonseca Rivera admitió que en el certificado médico que envió su doctor no especificó cuál era su diagnóstico.

96. La primera ocasión, en la cual la señora Fonseca Rivera realizó una reclamación de violación a la Ley de Seguro Choferil, fue cuando presentó la Segunda demanda enmendada el 13 de marzo de 2019.

97. **Mientras la señora Fonseca Rivera estuvo ausente de su empleo durante las distintas licencias, varias personas en PRTC, incluyendo su supervisora la Sra. Betzaida Nieves, tuvieron que realizar sus funciones**. (Énfasis nuestro).

98. **El codemandante, señor Sánchez Díaz, alegó que acudió en el 2017 a PRTC en varias ocasiones: dos (2) veces en septiembre, una (1) en octubre y otra en noviembre. En dichas visitas, entregó los documentos originales de la señora Fonseca Rivera, entre ellos, certificados médicos de la Dra. Cabezas y los documentos del seguro choferil. Dichos documentos fueron entregados a los siguientes empleados de PRTC: Leticia Martínez, Víctor Colón y Sharon Pérez**. (Énfasis nuestro).

99. El señor Sánchez Díaz indicó que el 4 de septiembre de 2017, le entregó a la Sra. Sharon Pérez, en un sobre, los documentos originales sobre la solicitud del seguro choferil de la señora Fonseca Rivera.

100. **El 31 de octubre de 2017, la Sra. Sharon Pérez envió un correo electrónico a la señora Fonseca Rivera, informando que la Sra. Ileana Agosto**

**estaba procesando la licencia por beneficios de seguro choferil con los documentos enviados por correo electrónico, pero necesitaba los originales**. (Énfasis nuestro).

101. El 14 de marzo de 2018, la Sra. María Rossy le envió un correo electrónico a Betzaida Nieves, Miguel Vargas, José Pulido, Eira Concepción y Zoraida Báez, en relación a la señora Fonseca Rivera, donde les recordó que el último día trabajado por la empleada fue el 14 de agosto de 2017, pues a partir de esa fecha estuvo en varias licencias consecutivas (maternidad, seguro choferil y licencia sin sueldo).

102. La Sra. María Rossy, Gerente de Administración de Licencias y Programa de Compensación de Beneficios de PRTC, tiene un juris doctor de la Universidad Interamericana, de donde se graduó [en] el 1990.

103. **La Sra. María Rossy vio las copias de la solicitud de seguro choferil de la señora Fonseca Rivera, pero al 2 de abril de 2019 no había visto los originales de la solicitud**. (Énfasis nuestro).

104. El 2 de julio de 2018, la Sra. María Rossy le solicitó, mediante correo electrónico a Betzaida Nieves, con copia a Ileana Agosto, que le hiciera llegar los originales de la solicitud del seguro choferil de la señora Fonseca Rivera.

105. El 1 de noviembre de 2018, el Sr. Amedaris Ocasio, de Beneficios del seguro choferil del DTRH, envió un correo electrónico a la Sra. Ileana Agosto, indicándole que la reclamante, la señora Fonseca Rivera alegó que radicó dos (2) solicitudes con PRTC y la empresa iba a hacer llegar los documentos originales a la agencia, pero estos aún no habían llegado a este programa del DTRH. Le solicitó que le indicara cómo podía hacer para obtener dichos documentos originales.

106. **El 21 de octubre de 2019, el Sr. Luis E. Costas Latoni, Director del Programa de Seguro Choferil del DTRH, le remitió una carta a la señora Fonseca Rivera, informándole que según las disposiciones de la Ley 428-1950, según enmendada, refirió su expediente del Caso Núm. 2019-0307(E), ante la consideración del Negociado de Asuntos Legales del DTRH, para que procediera con el trámite legal correspondiente**. (Énfasis nuestro).

107. Surge de los documentos presentados que la intervención del codemandante, señor Sánchez Díaz, consistió en comunicarse electrónicamente en algunas ocasiones con el personal de PRTC para informar sobre la situación y en entregar y/o enviar los documentos relacionados con las licencias solicitadas por su esposa.

108. De los documentos presentados y de la demanda enmendada no surgen alegaciones sobre intromisiones de PRTC con la vida íntima o familiar de la parte demandante. Tampoco surge que se haya diseminado información personal o difamatoria de la parte demandante.[18]

El TPI también determinó que los siguientes hechos fueron controvertidos:

1. Si el 14 de agosto de 2017, la Sra. Betzaida Nieves se comunicó vía teléfono con la señora Fonseca y le indicó que los agentes de ventas tenían que vender más o, de lo contrario, tendrían que eliminar la plaza de la demandante, por lo que ella se quedaría sin trabajo.
2. Si a la fecha del despido, la señora Fonseca Rivera tenía algún balance de enfermad, licencia por razones médicas familiares ("FMLA") o de cualquier otro tipo disponible.
3. ¿Qué significado y efecto tiene para PRTC el hecho de que la señora Fonseca Rivera "fue dada de baja" efectivo el 16 de abril de 2018?
4. De conformidad con el inciso anterior, está en controversia la fecha en que la codemandante, señora Fonseca Rivera, fue realmente despedida.
5. ¿Cuándo, por qué medio y a través de quién se le notificó a la señora Fonseca Rivera que la licencia sin sueldo de abril a mayo de 2018 no había sido aprobada?
6. Si PRTC le notificó o no a la señora Fonseca Rivera que la licencia sin sueldo durante el período del 15 de marzo al 14 de abril de 2018, sería la última concedida por su entonces patrono.
7. Si PRTC le comunicó a la demandante la determinación respecto a su solicitud de reconsideración de la licencia sin sueldo de abril a mayo de 2018. De habérselo comunicado, está en controversia por cuál medio ocurrió dicha comunicación, la fecha y a través de cuál empleado de PRTC ocurrió tal notificación.
8. Si la codemandante, la señora Fonseca Rivera recibió una respuesta de PRTC -en la afirmativa o negativa- acerca de su solicitud de dos (2) días de vacaciones, entiéndase los días 17 y 18 de abril de 201[8].
9. Si la señora Fonseca Rivera abandonó o no su empleo.
10. Si algún gerencial o empleado de la PRTC le informó a la señora Fonseca Rivera que si no se presentaba a trabajar el 16 de abril de 2018, sería despedida.

---

[18] *Íd*., Anejo I, págs. 11-29. (Énfasis nuestro).

11. Si la señora Fonseca Rivera, en efecto, entregó la segunda solicitud del seguro choferil.

12. ¿En qué fecha y quién radicó cada una de las solicitudes de seguro choferil de la codemandada, la señora Fonseca Rivera?

13. Si la PRTC tenía la obligación de radicar las solicitudes de seguro choferil de la señora Fonseca Rivera.

14. Si el 4 de junio de 2019, la señora Fonseca Rivera radicó en el DTRH copia de los documentos solicitando los beneficios de la Ley del Seguro Choferil.

15. Si PRTC le hizo o no llegar al DTRH las dos (2) solicitudes del seguro choferil de la señora Fonseca Rivera. De haberse entregado las solicitudes, está en controversia si la entrega se realizó tardíamente, ocasionándose algún perjuicio a la demandante.

16. Si PRTC cumplió con notificarle a la señora Fonseca Rivera los acerca de los términos de las distintas licencias a las que tenía derecho, según establece la Práctica RH-025-A.

17. Si el despido de la señora Fonseca Rivera estuvo o no justificado.

18. De haber sido injustificado el despido, está en controversia la cuantía de la mesada.

19. Si la señora Fonseca Rivera fue objeto de discrimen por embarazo. De haber sido objeto de discrimen, está en controversia la cuantía de la indemnización.

20. Si la señora Fonseca Rivera tiene derecho a reclamar pérdida de ingresos.[19]

Luego de analizar el derecho aplicable, el TPI determinó no ha lugar a la *Solicitud de Sentencia Sumaria*. Concluyó que:

[E]s forzoso concluir que existen controversias medulares que impiden que se pueda adjudicar sumariamente la totalidad del pleito como lo solicita la parte demandada.

Con relación a las causas de acción por despido injustificado, discrimen por razón de embarazo, pérdida de ingresos y la Ley del Seguro Choferil, según se indicó previamente, hay una serie de hechos en controversia que irremediablemente requieren el desfile de prueba testifical. De entrada, algunos de los hechos en controversia versan sobre la fecha del despido de la señora Fonseca Rivera y sobre varias de las notificaciones o falta de estas sobre sus solicitudes de licencias. Estos asuntos, así como las otras controversias de hechos identificadas, ameritan prueba testifical y ello -a su vez- requerirá que el Tribunal dirima la credibilidad. De otra parte, y como es sabido, el mecanismo de la sentencia sumaria no es el idóneo para adjudicar reclamaciones de discrimen. *Ramírez*

---

[19] *Íd*., págs. 30-32.

*Ferrer v. Consagra Foods PR*, 175 DPR 799, 811 (2009). Por consiguiente, ambas partes deben tener el beneficio de la celebración de un juicio en su fondo, luego de finalizar el descubrimiento de prueba.[20]

Inconforme, PRTC presentó la *Solicitud de Certiorari* que tenemos ante nuestra consideración. Señala los siguientes errores:

**A. ERRÓ EL TPI AL ACEPTAR LA DECLARACIÓN JURADA DE [LA SRA. FONSECA RIVERA] DE 30 DE OCTUBRE DE 2019 COMO EVIDENCIA PARA CONTROVERTIR LA SOLICITUD DE SENTENCIA SUMARIA DE LA PRTC PORQUE ÉSTA VIOLA LA DOCTRINA DE *SHAM AFFIDAVIT*.**

**B. ERRÓ EL TPI AL CONCLUIR QUE HAY CONTROVERSIAS DE HECHOS QUE IMPIDEN LA DISPOSICIÓN SUMARIA DE LA TOTALIDAD DE LAS RECLAMACIONES EN LA DEMANDA.**

## II.

### A.

La sentencia sumaria es un mecanismo procesal que provee nuestro ordenamiento para propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario. *Meléndez González et al. v. M. Cuebas, Inc.*, 193 DPR 100, 115 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013); *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288 (2012). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, permite dictar sentencia sumaria sobre la totalidad o sobre parte de una reclamación. Su función esencial es permitir en aquellos litigios de naturaleza civil que una parte pueda mostrar previo al juicio que, tras las partes contar con la evidencia que ha sido debidamente descubierta, no existe una controversia material de hecho que deba ser dirimida en un juicio plenario y que, por tanto, el tribunal está en posición de aquilatar esa evidencia para disponer del caso ante sí. *Rodríguez Méndez, et als v. Laser Eye*, 195 DPR 769 (2016); *Lugo*

---

[20] *Íd.*, págs. 55-56.

*Montalvo v. Sol Meliá Vacation*, 194 DPR 209 (2015); *Const. José Carro v. Mun. Dorado, supra,* pág. 128.

La Regla 36 de Procedimiento Civil dispone que la solicitud de sentencia sumaria puede ser presentada por cualquiera de las partes que solicite un remedio por medio de una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Se dictará sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de Derecho, procede hacerlo. Regla 36.3 (e) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo, supra.* Es decir, únicamente procede en aquellos casos en los que no existen controversias reales y sustanciales en cuanto los hechos materiales, por lo que lo único que queda, por parte del poder judicial, es aplicar el Derecho. *Oriental Bank v. Perapi S.E,* 192 DPR 7 (2014); *SLG Zapata-Rivera v. J.F. Montalvo, supra*; *Nieves Díaz v. González Massas*, 178 DPR 820 (2010).

Sobre el particular, hay que señalar que un hecho material es aquel que puede afectar el resultado de la reclamación al amparo del Derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200 (2010) (citando a J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609); *Abrams Rivera v. E.L.A.*, 178 DPR 914 (2010). La calidad del "hecho material" debe ser suficiente como para que sea necesario que un juez o jueza la dirima a través de un juicio plenario. *Ramos Pérez v. Univisión, supra.* Es decir, luego de aquilatar prueba testifical y de dirimir cuestiones de credibilidad.

Para demostrar de manera efectiva la inexistencia de controversia de hechos, la parte promovente está obligada a exponer las alegaciones de las partes, desglosar los hechos sobre los cuales aduce no hay controversia en párrafos debidamente numerados y para cada uno de ellos deberá especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que los apoye y las razones por las cuales debe ser dictada la sentencia argumentando el derecho aplicable. Regla 36.3 (a) (1)-(4) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J. F. Montalvo*, *supra*, pág. 432.

La parte que se oponga a que se dicte sentencia sumaria, según la citada Regla 36.3 de Procedimiento Civil, *supra*, deberá controvertir la prueba presentada por la parte que la solicita. Para ello, deberá cumplir con los mismos requisitos con los que tiene que cumplir el proponente, pero, además, su solicitud deberá contener:

> [U]na relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal.

*Íd.*, Regla 36.3 (b) (2).

De no hacerlo, correrá el riesgo de que la solicitud de sentencia sumaria sea acogida por el tribunal y se resuelva en su contra. *Ramos Pérez v. Univisión*, *supra*, pág. 215; *Luan Invest. Corp. v. Rexach Const. Co.*, 152 DPR 652 (2000).

La parte promovente puede prevalecer por la vía sumaria, si presenta prueba incontrovertida sobre todos los elementos indispensables de su causa de acción. La promovida puede derrotar la moción de sentencia sumaria de tres maneras: (1) si establece una controversia real de hechos sobre uno de los elementos de la causa de acción de la parte demandante, (2) si presenta prueba que apoye

una defensa afirmativa, (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la demandante. *Ramos Pérez v. Univisión, supra,* pág. 217.

Es norma firmemente establecida que toda duda sobre la existencia de una controversia de hechos bona fide debe ser resuelta contra la parte que solicita la sentencia sumaria. *SLG Zapata-Rivera v. J.F. Montalvo, supra*; *Córdova Dexter v. Sucesión Ferraiuoli,* 182 DPR 541 (2011). Por lo tanto, al determinar si existen controversias de hechos que impiden dictar sentencia sumaria, el juzgador debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la oposición, así como los que obren en el expediente. Dicho examen debe ser guiado por el principio de liberalidad a favor de la parte que se opone a que se dicte sentencia sumaria. *Ramos Pérez v. Univisión, supra.* De existir dudas sobre la existencia de una controversia de hechos, estas deben resolverse en contra del promovente, ya que este mecanismo procesal no permite que el tribunal dirima cuestiones de credibilidad. *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 610 (2000); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279-280 (1990); *Corp. Presiding Bishop v. Purcell,* 117 DPR 714, 720 (1986).

Nuestro Tribunal Supremo ha establecido que, aunque en el pasado se ha referido a la sentencia sumaria como un mecanismo procesal "extraordinario", ello no significa que su uso esté excluido en algún tipo de pleito. En ese sentido, no queda impedida la utilización del mecanismo de sentencia sumaria en reclamaciones que requieren la consideración de elementos subjetivos o de intención, cuando de los documentos a ser evaluados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a hechos materiales. *Ramos Pérez v. Univisión, supra,* pág. 219.

Ahora bien, nuestro ordenamiento jurídico establece que la sentencia sumaria sólo deberá dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. *Rosario v. Nationwide Mutual,* 158 DPR 775, 780 (2003). Ciertamente, la concesión de la sentencia sumaria está sujeta a discreción del tribunal; no obstante, el sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de su "día en corte", principio elemental del debido procedimiento de ley. Una parte tiene derecho a un juicio plenario cuando existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Esa controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. *Mejías Montalvo v. Carrasquillo Martínez,* 185 DPR 288, 300 (2012); *Nieves Díaz v. González Massas, supra,* pág. 849; *MGMT. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000).

Recordemos que el mecanismo de sentencia sumaria no es idóneo para todo caso civil ante la consideración de los tribunales. No debe ser utilizado en casos complejos, casos de alto interés público o casos donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial. *García López v. Méndez García,* 88 DPR 363 (1963); *Soto v. Hotel Caribe Hilton,* 137 DPR 294 (1994); *Elías y otros v. Chenet y otros,* 147 DPR 507(1999). También existen litigios donde, por su naturaleza, no es "deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones". *García López v Méndez García, supra,* pág. 380.

**B.**

Nuestro Tribunal Supremo ha dispuesto que el Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia o no de conceder una solicitud de sentencia sumaria. *Meléndez González et al. v M. Cuebas, supra*. A tal efecto, nuestra revisión es una *de novo*, y el análisis a realizar debe regirse por las disposiciones de la Regla 36.4 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. Por lo tanto, los requisitos del estándar de revisión del Tribunal de Apelaciones son:

(1) Los foros apelativos se encuentran en la misma posición del TPI al momento de revisar solicitudes de sentencia sumaria, pero están limitados en lo siguiente:

(a) no pueden tomar en consideración evidencia que las partes no presentaron en el TPI; y

(b) no pueden adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo.

(2) La revisión de los foros apelativos es una *de novo* y se debe examinar el expediente de la manera más favorable a favor de la parte que se opone a la moción de sentencia sumaria, llevando a cabo todas las inferencias permisibles a su favor.

(3) Los foros apelativos deben revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra.*

(4) Los foros apelativos deben revisar si en realidad existen hechos materiales en controversia. De haberlos, tienen que exponer concretamente qué hechos materiales encontró que están y cuales están incontrovertidos.

(5) De encontrar que los hechos realmente están incontrovertidos, los foros apelativos procederán a revisar *de novo* si el TPI aplicó correctamente el Derecho a la controversia.

Véanse *Meléndez González v. M. Cuebas*, supra; *Vera v. Dr. Bravo*, 161 DPR 308 (2004); C. Zeno Santiago, *op. cit.*, pág. 193.

Así, de entender que procede revocar una sentencia sumaria debemos indicar cuales hechos esenciales y pertinentes están en controversia e igualmente decir cuales están incontrovertidos. Si, por el contrario, encontramos que los hechos materiales (esenciales y pertinentes) realmente están incontrovertidos, nuestra revisión se limitará a revisar *de novo* si procedía en derecho su concesión. Es decir, si el Tribunal de Primera Instancia aplicó correctamente el Derecho o no. *Íd.*, págs. 118-119.

## C.

En nuestra jurisdicción, el Tribunal Supremo de Puerto Rico acogió la norma federal denominada *sham affidavit doctrine* en *SLG Zapata-Rivera v. J.F. Montalvo*, *supra.* Al amparo de esta doctrina, los tribunales están impedidos de considerar un testimonio reciente, suscrito por la parte adversa a la parte promovente de una solicitud de sentencia sumaria, que sea claramente incompatible con una declaración bajo juramento emitida anteriormente, si no ofrece una explicación adecuada para la nueva versión. *Íd.* Si la inconsistencia entre ambas declaraciones resulta evidente, el juzgador viene obligado a rechazar la declaración subsiguiente. *Íd.*

En *SLG Zapata-Rivera v. J.F. Montalvo*, se discute la doctrina de *sham affidavit* en su modalidad de omisión. C. Zeno Santiago, *Sumario de procedimiento civil puertorriqueño*, 1ª ed. rev., San Juan, Ed. Situm, 2023, pág. 189. El TSPR aplicó la doctrina "ante un demandante que omitió, en sus respuestas durante una deposición, hechos materiales y esenciales a su causa de acción y luego los reveló, por primera vez, a través de una declaración jurada para

oponerse a la solicitud de sentencia sumaria de la parte adversa". *Íd.* Permitir que una parte brinde respuesta a medias en una deposición, reteniendo información, para luego presentarla de forma acomodaticia en una moción de sentencia sumaria mediante una declaración jurada resulta contrario a los objetivos perseguidos por la Regla 36 de Procedimiento Civil, *supra. Lugo Montalvo v. Sol Meliá Vacation, supra,* pág. 222.

Al ser esta una doctrina del ámbito federal, debemos considerar el manejo de la misma por los tribunales federales. Los foros federales han señalado que los aspectos más importantes al determinar si estamos ante un "sham affidavit" son el tiempo en que se presenta la declaración y la razón por el conflicto entre esta y lo previamente testificado. "[W]hen a party 'has given clear answers to unambiguous questions, [they] cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.'" *Ayala v. Kia Motor Corp.*, 633 F.Supp.3d 547, 551 (D.P.R. 2022) (DRD). (Citando a *Escribano-Reyes v. Prof'l Hepa Certification Corp.*, 817 F.3d 380, 387 (1st Cir. 2016)). Por lo tanto, si de la declaración jurada surge un conflicto con lo ya testificado, y no existe una explicación satisfactoria para el conflicto, los tribunales deben considerar la declaración jurada con sospecha. "The Court considers the timing of the affidavit and the party's explanation for the discrepancies in determining whether the testimony constitutes an attempt to manufacture an issue of fact aimed at escaping summary judgment". *Íd.*, pág. 552.

### D.

La sección 1 de nuestra Carta de Derechos establece que "[l]a dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley. **No podrá establecerse discrimen alguno por** motivo de raza, color, **sexo**, nacimiento, origen o condición social, ni

ideas políticas o religiosas". Art. II, Sec. 2, Const. ELA [Const. PR], LPRA, Tomo 1. (Énfasis nuestro). Esta protección persigue eliminar cualquier discrimen basado en el género. En consecuencia, nuestra Asamblea Legislativa ha aprobado leyes laborales para proteger los derechos de las mujeres obreras en Puerto Rico. Entre ellas están la Ley Antidiscrimen de Puerto Rico, Ley Núm. 100 de 30 de junio de 1959, (29 LPRA sec. 146 *et seq.*) (Ley Núm. 100), la Ley de Protección de Madres Obreras, Ley Núm. 3 del 13 de marzo de 1942, (29 LPRA sec. 467 *et seq.*) (Ley Núm. 3) y la Ley para Garantizar la Igualdad de Derecho al Empleo, Ley Núm. 69 de 6 de julio de 1985 (29 LPRA sec. 1321 *et seq.*) (Ley Núm. 69).

En *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 DPR 117 (1990), el Tribunal Supremo resolvió que en un caso de discriminación por sexo al amparo de Ley Núm. 100, *supra,* por contener elementos subjetivos o de intención, se requiere hacer determinaciones basadas en la credibilidad de las partes. Por lo tanto, no procedía la resolución de la controversia por la vía sumaria. En *Soto v. Hotel Caribe Hilton, supra,* el Tribunal Supremo reiteró su razonamiento y lo aplicó a los casos de discrimen por edad.

En torno a los casos de discrimen por embarazo, el Tribunal Supremo ha resuelto que "[e]l discrimen por razón de embarazo de una empleada representa una modalidad del discrimen por razón de sexo". *López Fantauzzi v. 100% Natural*, 181 DPR 92, 120 (2011). Véase además *Rivera Águila v. K-Mart de PR*, 123 DPR 599, 607-608 (1989). Por lo tanto, el despido por causa de embarazo constituye un discrimen por sexo que activa una causa de acción de la empleada en contra de su patrono. Una empleada puede establecer un caso *prima facie* de despido injustificado demostrando que (1) hubo un despido o acto perjudicial, (2) que se realizó sin justa causa, y (3) que se cometió algún hecho base cónsono con la modalidad de

discrimen alegada. *López Fantauzzi v. 100% Natural, supra,* pág. 131. Establecido el caso *prima facie,* se activa una presunción rebatible a favor de la empleada y en contra del patrono.

> Luego que el empleado establezca su caso prima facie por discrimen, el patrono puede atacar la presunción activada de tres maneras, a saber: (1) derrotar el hecho básico —la ausencia de justa causa— (2) destruir el hecho presumido —que el despido fue por causa de motivos discriminatorios— o (3) destruir el hecho básico y el presumido a la vez. Finalmente, si el patrono logra derrotar la presunción de discrimen según las alternativas reseñadas, entonces el empleado deberá presentar prueba dirigida a establecer la existencia del discrimen, sin contar con el beneficio de la presunción.

> *Íd.*, pág. 124.

Lo que constituye justa causa para un despido no está definido por las leyes laborales antes citadas. Sin embargo, nuestro Tribunal Supremo ha resuelto que:

> Aun cuando la Ley Núm. 100, *ante,* no contenga una definición de lo que constituye justa causa para un despido, en buena hermenéutica, recurrimos al principio de aplicar e interpretar otras leyes *in pari materia*; ciertamente, las disposiciones sobre justa causa de la Ley de Despido Injustificado sirven de punto de referencia al interpretar la Ley Núm. 100.

> *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, esc. 47 (2001). (Cita omitida).

En consecuencia, podemos utilizar la Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185(a) *et seq.* (Ley 80). Para esto, el Artículo 2 de la Ley 80 dispone que:

> Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables

requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.

No se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley. En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su inmediata restitución en el empleo y a que se le compense por una cantidad igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo.

Cónsono con lo dispuesto ahí, "[h]emos reiterado, en un sinnúmero de ocasiones, que bajo las disposiciones de la referida Ley Núm. 80 constituye justa causa para el despido aquella que tiene su origen, no ya en el libre arbitrio o capricho del patrono, sino aquella vinculada a la ordenada marcha y normal funcionamiento de la empresa en cuestión". *Díaz v. Wyndham Hotel Corp., supra*, págs. 376-377.

**III.**

Con el marco legal esbozado, nos encontramos en posición para resolver, primero determinando que existen razones por las

cuales debemos ejercer nuestra discreción y expedir el auto de certiorari.

PRTC nos ha señalado dos errores. En primer lugar, debemos determinar si el TPI erró al permitir la inclusión de la *Declaración Jurada* de la Sra. Fonseca Rivera, en donde alegó que, estando embarazada, su supervisora le amenazó con eliminar su puesto de trabajo si no mejoraba su desempeño laboral. Que dichas expresiones le causaron un grado de estrés que provocaron su hospitalización y que le indujeran prematuramente el parto de su hija. En segundo lugar, PRTC señaló que el TPI erró al no disponer de la totalidad del caso mediante el mecanismo de sentencia sumaria.

Como hemos señalado, los "sham affidavits" son aquellas declaraciones juradas sometidas con el único propósito de frustrar una moción de sentencia sumaria. Para determinar si estamos ante una o no, debemos considerar el tiempo en el que se sometió la declaración y las razones que la parte ha provisto para justificar las discrepancias creadas entre esta y su testimonio previo.

El *Affidavit* de la Sra. Fonseca fue sometido el 30 de octubre de 2019, luego de que la PRTC sometiera su *Moción de Sentencia Sumaria*. Dicha declaración jurada contiene expresiones que crean hechos nuevos relacionados con el día en el que la Sra. Fonseca Rivera fue hospitalizada para dar a luz. En particular, declaró:

> 3. Que mi último día de trabajo en la Puerto Rico Telephone Company fue el 14 de agosto de 2017, estando embarazada de 26 semanas de gestación.
> Ese día mi supervisora inmediata, Betzaida Nieves Lebrón me llamó a su oficina como a las 8:30 de la mañana y expresó que los agentes de ventas tenían que vender más, o de lo contrario, tendría que cerrar el canal y no tendría plaza (lugar de empleo) donde colocarme. Por consiguiente, quedaría sin empleo. Posteriormente, ese día [fui] ingresada al Hospital Presbiteriano dando a luz el 5 de septiembre de 2017 y fui dada de alta el 9 de septiembre de [2017]. El nacimiento de mi hija fue [prematuro] de 7 meses.[21]

---

[21] Anejo IX, *supra*, pág. 991.

No obstante, en su deposición de 21 de febrero de 2019, no mencionó este evento o intercambio con su supervisora. Esto fue tanto a preguntas del abogado de PRTC como de su propia representación legal. Al contrario, a preguntas del abogado de PRTC, la Sra. Fonseca Rivera testificó que no había ocurrido algo fuera de las presiones normales de un departamento de ventas.

Al explicar la discrepancia entre los declarado y lo testificado, la Sra. Fonseca Rivera señaló que no mencionó el evento en su deposición porque no le preguntaron sobre ese asunto específicamente. No nos convence su justificación. Lo cierto es que un evento como aquél no hubiese pasado sin discutirse en una deposición, especialmente cuando el abogado de PRTC le había preguntado reiteradamente a la Sra. Fonseca Rivera sobre las alegaciones de discrimen por embarazo que estaba alegando. También le preguntó específicamente sobre su relación e interacciones con su supervisora, la Sra. Betzaida Nieves Lebrón. Ante estas preguntas, la Sra. Fonseca Rivera testificó que tenía una buena relación con ella. Los tribunales han sido enfáticos en sostener que nosotros los jueces no podemos ser tan ingenuos como para creer cosas que nadie más creería. *Pueblo v. Luciano Arroyo*, 83 DPR 573, 582 (1961). Por otro lado, el TPI reconoció como hecho no controvertido #50 que la Sra. Fonseca Rivera admitió que PRTC no tuvo nada que ver, ni fue responsable, de los sucesos desafortunados relacionados con el nacimiento de su hija. Ante la duda sobre la verdadera intención de la declaración jurada presentada, debemos resolver en contra de su admisión. Por lo tanto, se cometió el primer error señalado.

Ahora bien, como segundo error, debemos resolver si el TPI erró al no disponer de la totalidad del caso mediante la vía sumaria.

Tras la determinación de nuestro panel hermano, el TPI tuvo ante sí las reclamaciones sobre discrimen por embarazo y al amparo del Seguro Choferil. Luego de evaluar el expediente y los argumentos de las partes, desestimamos las reclamaciones sobre el discrimen por embarazo por la parte demandante no haber establecido un caso prima facie de despido injustificado.

Como hemos señalado, una empleada puede establecer un caso *prima facie* de despido injustificado demostrando que (1) hubo un despido o acto perjudicial, (2) que se realizó sin justa causa, y (3) que se cometió algún hecho base cónsono con la modalidad de discrimen alegada. *López Fantauzzi v. 100% Natural, supra*, pág. 131. Como elemento crucial de dicho reclamo, la empleada debe demostrar que su despido fue injustificado. *Íd.* En el caso de la Sra. Fonseca Rivera, ella no ha presentado prueba para permitirnos concluir esto. Surge del expediente que fue despedida por no comparecer al trabajo, luego de haber agotado todas sus licencias por maternidad y de vacaciones. Véanse las Determinaciones de hechos no controvertidos números 49, 56 y 57.

El reclamo de la Sra. Fonseca Rivera de que el despido fue a base de un discrimen por embarazo queda derrotado tras quedar incontrovertido el hecho de que al momento de su despido, ella no estaba embarazada ni bajo una licencia por maternidad. El Artículo 4 de la Ley Núm. 3, *supra*, dispone que:

> **El patrono no podrá, sin justa causa, despedir a la mujer embarazada o que adopte a un menor a tenor con la legislación y procedimientos legales vigentes en Puerto Rico o en cualquier jurisdicción de los Estados Unidos de América**. **No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo**.
>
> (a) **Todo patrono que despida, suspenda, reduzca el salario, o discrimine en cualquier forma contra una trabajadora por razón de la merma en su producción mientras ésta se encuentre en estado de embarazo o rehúse restituirla en su trabajo luego del alumbramiento o adopción de un menor a tenor con la legislación y procedimientos legales vigentes en Puerto Rico o cualquier jurisdicción de los Estados**

> **Unidos de América, incurrirá en responsabilidad civil** por una suma igual al doble del importe de los daños causados a la trabajadora, o por una suma no menor de mil (1,000) dólares ni mayor de cinco mil (5,000) dólares a discreción del Tribunal si no se pudieran determinar daños pecuniarios o el doble de éstos, si montaran a una suma menor de mil (1,000) dólares. La empleada además tendrá derecho a que se le reponga en su trabajo so pena de incurrir el patrono en daños adicionales idénticos o iguales a los establecidos en esta Sección. En todo caso de despido a una mujer embarazada se presume que la acción del patrono fue injustificada. El patrono deberá presentar suficiente prueba para rebatir la presunción.

(Énfasis nuestro).

La causa de acción que surge en virtud de dicha ley prohíbe el despido de una mujer **en estado de embarazo**. La misma ley dispone que el patrono tiene el deber de garantizar el puesto de la empleada **durante su licencia por maternidad**. *Íd.* También elimina como justa causa el menor rendimiento para el trabajo por causa del embarazo. En cuanto a esta causal, la Sra. Fonseca invita a este Tribunal, mediante su *Declaración Jurada,* a concluir que antes de que la Sra. Fonseca Rivera diera a luz, su supervisora directa había cuestionado su rendimiento durante su embarazo. Como ya hemos resuelto, no podemos considerar dicho argumento puesto que la *Declaración Jurada* fue presentada con el propósito de frustrar la *Moción de Sentencia Sumaria* presentada por PRTC. Al mismo tiempo, no existe indicio alguno en la prueba presentada que señale que el despido fue causado por razón relacionada con el embarazo. Al contrario, PRTC honró el término de licencia por maternidad y las licencias por vacaciones que tenía la Sra. Fonseca Rivera. También, le concedió varios meses de licencia sin pago, los cuales son concedidos a discreción del patrono y no existe obligación alguna para su renovación.

La Sra. Fonseca Rivera fue debidamente notificada de las fechas en las cuales culminaban sus licencias sin pago y cuando tenía que reportarse al trabajo. La última licencia sin pago le notificó

que debió regresar al trabajo el 16 de abril de 2018. En consecuencia, PRTC cumplió con su deber y le garantizó el puesto de la Sra. Fonseca Rivera para que regresara al trabajo. Como aceptó la Sra. Fonseca Rivera, no es culpa de PRTC que ella no haya podido hacer gestiones para cuidar a su hija en lo que ella iba al trabajo. Luego de revisar el caso *de novo*, concluimos que no se ha probado un caso *prima facie* de daños por discrimen por embarazo, ni uno de despido injustificado. En consecuencia, se desestima dicha causa de acción.

En consideración a la causa de acción por el Seguro Choferil, resolvemos no desestimarla. Estamos en acuerdo con la determinación del TPI que existe controversia en cuanto a si la Sra. Fonseca Rivera tiene derecho al mismo. Por lo tanto, devolvemos el caso al Tribunal de Primera Instancia para que continúen los procedimientos relacionados con esta causa de acción.

Tras lo dispuesto aquí, acogemos todas las determinaciones de hechos que el TPI estimó no controvertidas. Con relación a las determinaciones de hechos controvertidos, estimamos que el hecho número 1 no está en controversia por estar basado en la *Declaración Jurada* que sometió la Sra. Fonseca Rivera. El hecho controvertido número 16 tampoco está en controversia puesto que el 28 de diciembre de 2012, la Sra. Fonseca Rivera aceptó que acusó recibo de que recibió el documento Práctica RH-025-A de PRTC, titulado Ausencias y Licencias.[22] El 13 de septiembre de 2017, la señora Ileana Agosto, analista de beneficios de personal, le envió una carta a la Sra. Fonseca Rivera indicándole que su licencia de maternidad fue procesada de conformidad con la Ley de Madres Obreras y la Práctica RH-025-A de PRTC. Se le explicó que los periodos de licencia por maternidad se agotaban concurrentemente con los

---

[22] *Íd*., Anejo VIII, pág. 42.

periodos cubiertos por la licencia por razones médicas familiares y se le proveyó datos para que se comunicara de necesitar información adicional.[23] El 1 de noviembre de 2017, la Sra. Agosto le envió una carta a la Sra. Fonseca Rivera explicándole los beneficios de SINOT, Choferil y ACAA, los pasos a seguir y los términos de las distintas licencias. En varias ocasiones, la Sra. Betzaida Nieves le notificó a la Sra. Fonseca Rivera sobre los pormenores y términos y condiciones de la licencia sin sueldo.

Con relación a los hechos controvertidos números 9, 17, 18, 19 y 20, consideramos que estos son controversias de derecho y no de hecho, por lo que el TPI erró al considerarlos hechos en controversia. El elemento principal del discrimen por razón de embarazo es que se tome acciones en contra de la madre obrera por su rendimiento laboral menor por razón de embarazo. La realidad es que la Sra. Fonseca Rivera no mostró instancia alguna en la que la PRTC tomara alguna acción en contra suya por bajo rendimiento laboral. Por el contrario, la empresa le respetó sus licencias por maternidad y garantizó su plazo durante este periodo. El mero hecho de que la obrera no realice gestiones para el cuido de su hija no constituye una complicación posnatal, producida directamente por el alumbramiento. Como hemos señalado, el despido de la Sra. Fonseca Rivera fue justificado al no reportarse al trabajo, pese saber que su licencia sin pago no fue renovada y la que cursaba culminaba el 16 de abril de 2018. Conforme la Regla 24 del Reglamento de Disciplina de la PRTC, este acto podrá constituir abandono del empleo.

Otros de los hechos alegadamente controvertidos no son decisivos o pertinentes a las causas de acción presentadas, por lo que su inclusión no afecta nuestra determinación.

---

[23] *Íd*., págs. 51-53.

**IV.**

Por las razones discutidas, revocamos la determinación del TPI. Se ordena la desestimación de la causa de acción de discrimen por embarazo y la eliminación de la *Declaración Jurada* anejada a la *Oposición a Sentencia Sumaria*. Así, devolvemos el caso al TPI para la continuación de los procedimientos en cuanto a la causa de acción al amparo del Seguro Choferil.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones